17-523
TrueNorth Capital Partners LLC v. Hitachi Metals America, Ltd.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of January, two thousand eighteen.

PRESENT:
        DENNIS JACOBS,
        PETER W. HALL,
        CHRISTOPHER F. DRONEY,
            Circuit Judges.
_____

TRUENORTH CAPITAL PARTNERS LLC,
TNCP, LLC,
        Plaintiffs-Appellants,

        -v.-                                            17-523

HITACHI METALS, LTD., HITACHI
METALS AMERICA, LLC, HITACHI
METALS AUTOMOTIVE COMPONENTS USA,
LLC., HITACHI METALS FOUNDRY
HOLDINGS, INC., n/k/a HITACHI
METALS AMERICA HOLDINGS, INC.,
        Defendants-Appellees.

1

**FOR PLAINTIFFS-APPELLANTS:** LAWRENCE M. SEGAN, Law Office of Lawrence M. Segan, New York, NY.

**FOR DEFENDANTS-APPELLEES:** DAVID B. SALMONS (<u>with</u> Troy S. Brown, Margot G. Bloom, and Michael E. Kenneally <u>on the brief</u>), Morgan, Lewis & Bockius LLP, Philadelphia, PA and Washington, DC.

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

TrueNorth Capital Partners LLC and its subsidiary TNCP, LLC (collectively "TrueNorth") brought this contract action against various entities in the Hitachi, Ltd. corporate family (collectively "Hitachi"), claiming entitlement to a $6.8 million "Completion Fee" allegedly due under the parties' written agreement. The United States District Court for the Southern District of New York (Daniels, <u>J.</u>) granted summary judgment for Hitachi on two independent grounds, and TrueNorth now appeals. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"In reviewing a written contract, a [] court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." <u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428 (2d Cir. 1992). When, as here, the operative language is unambiguous, the proper effect to give it is a question of law that may be resolved on summary judgment. <u>See</u> <u>id.</u>

TrueNorth contracted to advise Hitachi in its efforts to invest in a "Target" company, which the contract defined as any "ductile iron producer having production facilities in the U.S., Canada and/or Mexico." App'x at 31. The contract guaranteed TrueNorth an up-front retainer and a monthly fee. A Completion

Fee was contingent upon Hitachi's "consummation of an[] Investment [in] a[] *Selected Target*." Id. at 34 (emphasis added). The contract further provided that the parties "shall agree in writing" on which "Targets" constitute "Selected Targets."[1] Id. at 31. That unambiguous writing requirement dooms TrueNorth's claim.

TrueNorth claims that when Hitachi consummated an investment in Waupaca Foundry, Inc.--which was undisputedly a Target under the parties' contract--Hitachi was required to pay TrueNorth a Completion Fee of $6.8 million. Hitachi counters that TrueNorth's claim is foreclosed because the contract allowed for a Completion Fee only if Hitachi invested in a Selected Target, and the parties did not "agree in writing" that Waupaca was a Selected Target. The district court cited the absence of a written agreement designating Waupaca a Selected Target as one ground for awarding Hitachi summary judgment. On de novo review, see Sousa v. Marquez, 702 F.3d 124, 127 (2d Cir. 2012), we affirm on that ground.

TrueNorth argues that the writing requirement was (1) satisfied or (2) waived.

**1.** TrueNorth asserts that "writings between the parties . . . conclusively establish[ed] an agreement that Waupaca was a Selected Target." Appellant's Br. at 25. This assertion is belied by the record. It is undisputed that in March 2012, the parties agreed in writing to a list of 22 Selected Targets, which did not include Waupaca.[2] And TrueNorth points to no subsequent writing in which Hitachi manifested its assent to any modification to that list.

---

[1] The distinction between Targets and Selected Targets was written into the contract at Hitachi's behest, after an earlier iteration required payment of a Completion Fee upon Hitachi's "consummation of an[] Investment [in] any Target." Appellee's Br. at 9.

[2] The list actually included only 21 distinct entities, as one of the entities listed was owned by another, but both parties stipulate to the irrelevance of this discrepancy.

3

TrueNorth identifies as the requisite writing its unilateral inclusion of Waupaca on spreadsheets summarizing its research efforts, which it emailed in updated versions to Hitachi three times during April 2012.  Those spreadsheets were organized into tabs labeled "Targets," "Comments," and "Unlikely"; but Waupaca never appeared on the "Targets" tab, which included only the companies on the parties' agreed-upon March 2012 list of Selected Targets.  Moreover, Waupaca's inclusion on the spreadsheets was not inherently meaningful, given that TrueNorth conducted research on numerous companies that it concedes were not Selected Targets and included summaries of that research on similar spreadsheets that it also emailed to Hitachi.

Even assuming that, through its spreadsheets, TrueNorth communicated in writing its intent to add Waupaca to the list, no writing from Hitachi evinced its agreement.  Hitachi did not respond to the emails that contained the spreadsheets, and no writing from Hitachi to TrueNorth so much as mentioned Waupaca.  True, an email from Hitachi to TrueNorth attached an unaltered version of one of the spreadsheets, which included Waupaca; but the body of that email merely sought an update on information provided in the spreadsheet about a different company.  This cannot satisfy the unambiguous contractual requirement that the parties "agree in writing" before a given Target may become a Selected Target capable of generating a Completion Fee, and we are "required to give effect to" that requirement.  U.S. Tr. Co. of N.Y. v. Jenner, 168 F.3d 630, 632 (2d Cir. 1999) (internal quotation marks omitted).

**2.** TrueNorth asserts in the alternative that Waupaca became a Selected Target notwithstanding the unambiguous force of the contract's writing requirement because that requirement was either modified or waived.  This assertion lacks merit in view of the contract as a whole.  See Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005) ("Contracts must be read as a whole . . . .").  The contract specifically stated that the parties could "modif[y] . . . or waive[]" its requirements only through a "writing signed by the parties."  App'x at 36.

4

It is undisputed that the parties did not execute a signed writing modifying or waiving the writing requirement.[3]

New York law (which the parties agree governs) enforces the requirement of a signed writing before the parties may depart from a contractual term.  See, e.g., Towers Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 521-22 (2d Cir. 1990) (citing N.Y. Gen. Oblig. Law § 15-301).  There are only two showings that a party can make in order to circumvent such a provision, and TrueNorth attempts to make only one of them: TrueNorth attempts to establish that the parties "partial[ly] perform[ed]" an unwritten agreement to depart from the writing requirement, and that the conduct allegedly constituting partial performance was "unequivocally referable to the" departure, meaning it was "[in]compatible with the original agreement."  Id. at 522 (internal quotation marks omitted). TrueNorth cannot, "as a matter of law," make such a showing. Id.

TrueNorth relies (in part) on Hitachi's apparent acquiescence to TrueNorth's memorialization in its initial spreadsheet of the Selected Targets list to which the parties agreed in writing.  No reasonable factfinder could conclude from that conduct that Hitachi acceded to a new arrangement under which any company placed on a subsequent TrueNorth spreadsheet became a Selected Target once the spreadsheet was received by Hitachi over email without objection.  To the contrary, that conduct was "[]consistent with the agreement as written."  Id.  "[N]othing in the written agreement[] precluded" TrueNorth from documenting its work in spreadsheets or required Hitachi "to object" if it did not endorse TrueNorth's organization of its spreadsheets.  Id.  TrueNorth fails to identify conduct that is "explainable only [by the existence of a new] agreement."  Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir. 1998) (internal quotation marks omitted).

---

[3] In contrast, the parties *did* execute a signed writing modifying other provisions in the contract--namely, those governing the agreement's duration.

5

TrueNorth fares no better to the extent that it relies on Hitachi's oral grant of permission to TrueNorth to contact Waupaca. Hitachi authorized TrueNorth to contact numerous companies that (TrueNorth concedes) were not Selected Targets. This was consistent with the contract's requirement that TrueNorth abstain from "contact[ing] any *Target* without [Hitachi's] approval." App'x at 32 (emphasis added). As the district court noted, "it [was] not inconsistent for [TrueNorth] to [contact] Waupaca with [Hitachi's] oral approval as a 'Target,' but still lack [Hitachi's] *written consent* to designate Waupaca as a 'Selected Target.'" Truenorth Capital Partners LLC v. Hitachi Metals Am., LLC, No. 15 CIV. 651, 2017 WL 532407, at *7 (S.D.N.Y. Feb. 3, 2017) (emphasis added). Accordingly, the conduct at issue "is reasonably explained" without reference to a departure from the contract as written. Argenti, 155 F.3d at 122 (internal quotation marks omitted).

In sum, TrueNorth cannot circumvent the contract's express proscription of unwritten departures. For the same reasons, its argument premised on ratification is foreclosed. See id.

We have considered TrueNorth's remaining arguments and find them to be without merit. We **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6